**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GARY EUGENE WATKINS,

      Petitioner,             Civil No. 2:10-CV-13199
                               HONORABLE ARTHUR J. TARNOW
v.                          UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

      Respondent,

_____/

**OPINION AND ORDER GRANTING THE**
**PETITION FOR WRIT OF HABEAS CORPUS**

      Gary Eugene Watkins,("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1]  In his petition, filed through attorneys James C. Thomas and Phillip D. Comorski, petitioner challenges his convictions for second-degree murder, M.C.L.A. 750.317; assault with intent to commit murder, M.C.L.A. 750.83; and two counts of felony-firearm, M.C.L.A. 750.227b.

      This Court finds that petitioner was denied the effective assistance of trial counsel when his attorney failed to request an additional or independent

---

     [1]  When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Bellamy Creek Correctional Facility, but has since been transferred to the Macomb Correctional Facility.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.  Therefore, the Court substitutes Warden Randall Haas in the caption.

*Watkins v. Haas,* 2:10-CV-13199

evaluation as to petitioner's mental competency to stand trial after petitioner

continued to exhibit signs of mental illness and an inability to understand the

proceedings.  Accordingly, the petition for writ of habeas corpus is

**CONDITIONALLY GRANTED.**

## I. Background

Petitioner was originally charged with open murder, [2] assault with intent to

commit murder, and two counts of felony-firearm.  Petitioner was convicted of

second-degree murder on the open murder charge, and guilty as charged of the

remaining charges.

At the initial date for the preliminary examination, petitioner's trial counsel

requested that petitioner be evaluated for mental competency and criminal

responsibility. (Tr. 1/24/06, p. 3).  Petitioner was referred to the Center for

Forensic Psychiatry.  Two evaluations were performed, one on March 27, 2006

and the other on April 13, 2006.

At petitioner's preliminary examination, the reports from the March 27,

2006 and April 13, 2006 evaluations were admitted. (Tr. 5/26/06, pp. 4-5)  The

March 27, 2006 report concluded that petitioner was incompetent to stand trial.

---

[2]  Under Michigan law, it is proper to charge a defendant with the crime of
open murder.  Such a charge gives a circuit court jurisdiction to try a defendant
on first and second-degree murder charges. *See Taylor v. Withrow,* 288 F.3d
846, 849 (6th Cir. 2002).

2

2:10-cv-13199-AJT-PJK   Doc # 19   Filed 10/23/15   Pg 3 of 26   Pg ID 1165

*Watkins v. Haas,* 2:10-CV-13199

The April 13, 2006 report, however, indicated that petitioner had been restored to competency.  This second evaluation determined that petitioner's refusal to verbally communicate was entirely voluntary.  The examiner concluded that petitioner was faking.   Based on that, and on a full examination of his history and behavior, the second examiner concluded that petitioner was malingering, he was aware of what was going on, was able to aid in his defense, and so was competent to stand trial.  Petitioner's counsel requested an independent evaluation.  The state district court judge never explicitly ruled on the request. Rather, the judge found petitioner competent to stand trial. (*Id.,* pp. 8).  Petitioner was later bound over to the Washtenaw County Circuit Court for trial. (*Id.,* p. 96).

The trial judge in circuit court subsequently ordered that petitioner be evaluated primarily for criminal responsibility. (Tr. 7/11/06, p. 4).

A third forensic evaluation, dated July 17, 2006, was not specifically aimed at evaluating petitioner's trial competency, but rather a determination as to whether petitioner was criminally responsible at the time of the criminal offense. This evaluation found that petitioner was neither mentally ill nor mentally retarded at the time of the offense and could appreciate the wrongfulness of his action.  In passing, the psychologist who wrote this evaluation also believed that petitioner was malingering and came to the same conclusion as the second evaluation, namely, that petitioner was competent.

3

*Watkins v. Haas,* 2:10-CV-13199

Four months later, defense counsel again moved for an independent

competency evaluation:

> Mr. Watkins has been sent to the forensic center on two different
> occasions for evaluation. And on one brief occasion for treatment. The
> staff of the forensic center has got it into their head that he is faking.
> That his affectations are deliberate on his part and there's nothing
> psychologically wrong with him.  On the other hand, having tried to
> communicate with my client for I believe close to eight months now
> there are issues. His behavior is not normal behavior and my fear after
> reading the reports of the forensic center is that all the subsequent
> evaluators did was simply pick up the line that was laid down by the
> original evaluator. Well I'm sorry. The original evaluator said that he
> was incompetent. And he was sent to the forensic center for treatment
> based upon that evaluation. But somebody on the staff got it into their
> head that he was faking it. And that's all they've done since that time is
> just –is just mirror that same -- they just pick up that same line over and
> over and over again. And yet you know trying to communicate with
> him, listening, listening to him talk. Listening to him make comments
> that are totally inappropriate there is no communication between myself
> and Mr. Watkins. And I do believe that there is something wrong with
> him that is making it difficult.

(Tr., 9/19/2006, pp. 3-4).

The judge granted counsel's request and a fourth psychiatric evaluation was

ordered. (*Id.,* p. 6).

Petitioner's counsel subsequently informed the trial court:

> I did have an oral report from Doctor Clark about a month ago but I
> didn't get the written report until the end of last week. Basically I can
> summarize. He felt that although Petitioner Watkins -- there were some
> psychological issues with Petitioner Watkins there was nothing
> sufficient in them to make a finding of lack of *criminal responsibility*.

(Tr., 12/12/06, p. 4)(emphasis added).

4

*Watkins v. Haas,* 2:10-CV-13199

At a final pretrial conference one week later, petitioner remarked:

> I have an attorney's license and I'll be representing myself. He's [defense trial counsel's] been fired.  If I can't have her, the public defender, then I will be representing myself and this is a preliminary exam.  Am I correct?

(Tr., 12/19/06, p. 4).

On the first day of trial, prior to jury selection, petitioner told

the trial court, among other things:

> Don't play with me.  I ain't got no time for your games.  This ain't no real court.  Get me back to the real world.  I'm going  back to my wife and I'm eating dinner.  You heard me.

(Tr, 1/8/07, p. 10).

The following exchange also occurred:

THE COURT: Good morning, Mr. Watkins. Are we going to --

THE DEFENDANT: Your name is Michelle.

THE COURT: Um-hum.

THE DEFENDANT:  Ah.  You want to split yourself in half get people up early for court.  To this fake ass court.  You know this is garbage, right? Um-hum, na, na I'll chop him up.

THE COURT: I didn't hear you, what did you say?

THE DEFENDANT: I said I'll chop you up.

THE COURT: Oh.

THE DEFENDANT: If I can get a temper.  You know I got like a preacher sword, right?

5

*Watkins v. Haas,* 2:10-CV-13199

THE COURT: A preacher sword?  I didn't hear.

THE DEFENDANT: I'm not going to repeat words.

THE COURT: Yeah, so I can hear you.

THE DEFENDANT: -- Sesame Street. You ain't the real Shelton.  You know you ain't.  This ain't the real world.  Get me off this pop bar.

(*Id.,* p.12).

Petitioner further "demanded to be restrained." (*Id.,* pp. 12-13).  Petitioner then demanded to plead guilty and indicated that he had not eaten a meal since "the first." (*Id.,* p. 13).  Petitioner continued to shout that he was guilty and demanded that the judge proceed with sentencing. (*Id.,* p. 14). Petitioner then spat. (*Id.,* p.15).

During jury selection, petitioner interjected "guilty" several times. (*Id.,* pp. 34, 40).  The trial judge ordered petitioner removed from the courtroom after he flipped over a desk and remarked "No more games Michelle."   Petitioner was placed in a holding room equipped with a closed-circuit video monitor. (*Id.,* pp. 51-55).  The trial judge subsequently remarked: "When we -- the volume is too loud and so the officer and the technician went into [sic] adjust the volume and he spit on the officer -- the defendant spit on the officer.  He also managed to urinate on the television and the -- and the cart." (*Id.,* p. 205).

*Watkins v. Haas,* 2:10-CV-13199

Petitioner remained outside the courtroom during the prosecution's case.

Petitioner re-entered the courtroom to testify.  The following exchange occurred:

> MR. GOLDSTEIN [defense trial counsel]: Your Honor, I informed Mr. Watkins that the People have rested.  I informed Mr. Watkins it is our opportunity at this point to proceed.  I informed Mr. Watkins that he has a right to testify in this matter on his own behalf if he chooses to do so. We did have a discussion as to my feeling about that which I'll get to in a moment.  Mr. Watkins has indicated that he wishes to testify in this matter and given that he has an absolute right to do so I assume the Court will allow that.  Mr. Watkins and I also discussed his dress, the clothes that he had yesterday.  That is the, the blue jacket and the dark pants or the tan pants are here.  I offered those to Mr. Watkins and indicated he could wear those if he wished.  He indicated that he would prefer to wear the jail orange while he's testifying.  I want the record to be clear that he is testifying, although he has an absolute right to do so it is against my advice.  I felt that the presentation of the proofs through the People's witnesses was very favorable to Mr. Watkins.  I thought the record is probably as good as now as it's ever going to get. That there's no benefit to me to testifying since they heard his statement through the testimony of Detective Gress.  He exercised his right, however, to testify despite my advice.  Because it is my belief that his testimony will not be helpful to his case it is my intention to call him and then offer him for cross examination. I will ask him no questions. I will reserve the right, of course, to do redirect after Mr. Barnett [prosecutor] is done.  But I do not intend to ask him any questions other than his name.

> THE COURT: All right. Mr. Watkins, if you like you can testify now?

> THE DEFENDANT: I want Jesus to be my judge.

> THE COURT: Yeah, well you've got me because he's not available.  So do you feel like you can testify and control yourself during the testimony?

> THE DEFENDANT: Yes, sir.

*Watkins v. Haas,* 2:10-CV-13199

THE COURT: If you act out again, if you throw stuff, if you spit, if you do those other things I'll have you taken out of here again.  Do you understand?

THE DEFENDANT: I guess.

(Tr. 1/9/07, pp. 74-76).

In the presence of the jury, petitioner gave his full name in response to defense trial counsel's question.  On cross-examination, the prosecutor asked petitioner if he shot and killed the decedent.  Petitioner answered, "I'm in fear for my life so I can't testify." (*Id.,* p. 77).  Petitioner subsequently testified that he shot the decedent with the handgun, but denied shooting him with the shotgun or having a second shotgun in his residence. (*Id.,* pp. 78-79, 81).  Petitioner testified that he shot the decedent a couple of streets away from his own home, but then stated he did not know if he had contact with the decedent on January 10, 2006 (*Id.,* pp. 83-84, 95).  Petitioner testified he had shot the decedent because "I thought … it was him causing me to go to jail for a dope case and that's the reason that I ended up shooting him when I got out of jail." (*Id.,* p. 85).  Petitioner admitted firing the shotgun on January 10, 2006, but did not know who he shot. (*Id.,* p. 90).

At sentencing, petitioner's brother informed the court that petitioner had a long history of bizarre, delusional, or paranoid thoughts and behaviors,

8

*Watkins v. Haas,* 2:10-CV-13199

particularly an obsession with the Masons. (Tr. pp. 22-23).  Petitioner then

informed the trial judge:

> I didn't have no real family. I was born a white baby. [Petitioner is
> African-American].  The person you keep referring to as Quincey Lee
> Varner ain't a real name, that's an alias.  The person that killed on that
> porch that day was my brother.  His name is Kimred Bell.  He didn't live
> by that name and I didn't live by my name.  We had to live by aliases….
> My name became Watkins due to the medicine that we use to beat
> tuberculosis which was killing black kids.  But I was born a white baby
> and got pigment from Quincey.

(*Id.,* pp. 33-35).

In sentencing petitioner, the judge acknowledged that petitioner was "clearly

mentally ill" and "seriously mentally disturbed." (*Id.,* p. 38).

While petitioner's application for leave to appeal was pending in the

Michigan Court of Appeals, petitioner's appellate counsel filed a motion to

remand, together with an offer of proof that he had received a copy of petitioner's

medical records from the Michigan Department of Corrections, including a report

of a comprehensive psychiatric examination performed on March 14, 2007,

indicating a diagnosis of a psychotic disorder, and that a Dr. Gendernalik

prescribed anti-psychotic medication.

Petitioner's conviction was affirmed on appeal. *People v. Watkins,* No.

283745 (Mich.Ct.App. August 5, 2008); *lv. Den.* 483 Mich. 1016 (2009).

9

*Watkins v. Haas,* 2:10-CV-13199

Petitioner's motion for equitable tolling, his brief in support of equitable tolling, and his affidavit were signed and dated July 28, 2010. [3]  The Court denied petitioner's motion for equitable tolling as moot, because the judgment of conviction became final not on May 27, 2009, the date that the Michigan Supreme Court denied petitioner leave to appeal, but on August 25, 2009, when petitioner failed to file a petition for writ of certiorari with the U.S. Supreme Court. Petitioner had until August 25, 2010, and not May 27, 2010, as he believed, to file his habeas application in conformance with the AEDPA's statute of limitations. Because petitioner's application had been filed on July 28, 2010, the petition was timely filed, thus, any equitable tolling arguments were moot. *Watkins v. McKee*, No. 2:10-CV-13199, 2010 WL 3324979, at *2 (E.D. Mich. Aug. 20, 2010).  The Court further held the petition in abeyance so that petitioner could return to the state courts and exhaust additional claims. *Id.,* * 2-3. [4]

---

[3]  Under the prison mailbox rule, a federal habeas petition is filed when the prisoner gives his petition to prison officials for mailing to the federal courts. *Hudson v. Martin,* 68 F. Supp. 2d 798, 799, n. 2 (E.D. Mich. 1999).  Absent evidence to the contrary, a federal court will assume that a prisoner gave his habeas petition to prison officials on the date he signed it, for the purposes of the AEDPA's one year limitations period. *Id.*  Because petitioner's pleadings were signed and dated July 28, 2010, this Court assumed that this was the date that petitioner actually filed his habeas application with this Court.

[4]  Although petitioner did not file a separate habeas application with his motion for equitable tolling and his request for a stay, the Court construed his pleadings as a petition for writ of habeas corpus, because he listed the claims

*Watkins v. Haas,* 2:10-CV-13199

Petitioner filed a post-conviction motion for relief from judgment, which was

denied. *People v. Watkins,* No. 06-70-FC (Washtenaw County Circuit Court,

October 28, 2010); *reconsideration den.* December 28, 2010.

Petitioner filed a second motion for relief from judgment, which was also

denied. *People v. Watkins,* No. 06-70-FC (Washtenaw County Circuit Court, June

11, 2013).  The Michigan appellate courts denied petitioner leave to appeal.

*People v. Watkins,* No. 318199 (Mich.Ct.App. October 28, 2013); *lv. den.* 495

Mich. 1006 (2014).

This Court reopened the petition to the Court's active docket, amended the

caption, and permitted petitioner to file an amended habeas petition. *Watkins v.*

*Romanowski*, No. 2:10-CV-13199, 2014 WL 3894370, at *1 (E.D. Mich. Aug. 7,

2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defense trial counsel was constitutionally ineffective in failing at trial
to challenge Watkins's competency to stand trial, in view of his bizarre
behavior.

II. Defense trial counsel was constitutionally ineffective in failing to
request a jury instruction on imperfect self defense reducing
second-degree murder to voluntary manslaughter, and in failing to
request a jury instruction that Watkins had no duty to retreat from the
enclosed porch at Watkins's residence before using deadly force in
self-defense.

---

that he wished to raise in his post-conviction proceedings. *Watkins v. McKee*,
2010 WL 3324979, at * 1, n. 1 (E.D. Mich. Aug. 20, 2010).

*Watkins v. Haas,* 2:10-CV-13199

III. Where a flawed jury form did not provide an opportunity for a general verdict of not guilty, Watkins was deprived of his constitutional right to a jury trial.

IV. The trial court denied Watkins his constitutional right to self-representation when it refused his request for self-representation and foreclosed any further discussion of the issue by telling Watkins that he could only be represented by the attorney he sought to have removed previously.

V. Watkins was denied counsel was defense counsel informed the court before trial that there was a breakdown in the attorney/client relationship, due to the fact that defense counsel had no idea what witnesses to call, claiming ongoing communication problems between him and Watkins.

VI. The court violated Watkins's constitutional right to a trial by a fair and impartial jury by allowing a juror to serve, even after the juror informed the court that she personally knew Watkins from college, and Watkins was denied his right to the effective assistance of counsel at trial where counsel failed to remove this juror from the jury.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

*Watkins v. Haas,* 2:10-CV-13199

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

Petitioner claims that he was denied the effective assistance of trial counsel.

This Court reviewed the pleadings, the lower court record, and the decisions of the Michigan Court of Appeals on petitioner's direct appeal and the state courts on petitioner's first-post-conviction motion.  The Court concludes that petitioner was denied the effective assistance of trial counsel when his attorney failed to request an additional evaluation of petitioner's competency to

13

*Watkins v. Haas,* 2:10-CV-13199

stand trial after petitioner continued to engage in bizarre behavior and make

incoherent, delusional, and nonsensical remarks at a subsequent pre-trial

conference and at trial.

**A. The statute of limitations issue.**

Respondent contends that petitioner's amended habeas petition is time-

barred because it was filed beyond the one year limitations period for filing

habeas petitions contained in 28 U.S.C. § 2244(d).  Although acknowledging that

petitioner's first habeas application was timely filed and subsequently held in

abeyance, respondent contends that none of the claims raised by petitioner

relate back to the claims raised in his first petition.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one

year statute of limitations shall apply to an application for writ of habeas corpus

by a person in custody pursuant to a judgment of a state court.  The one year

statute of limitation shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such
> State action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or

14

*Watkins v. Haas,* 2:10-CV-13199

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. *See Holloway v. Jones,* 166 F. Supp. 2d 1185, 1188 (E.D. Mich. 2001).

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Petitioner's claim in his amended petition that trial counsel was ineffective for failing to request an independent or additional competency evaluation is timely because it relates back to a claim that he raised in his initial petition, where he raised claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Petitioner's current ineffective assistance of trial counsel claim shares a common core of facts with these claims, thus, it appears to be timely filed.

15

*Watkins v. Haas,* 2:10-CV-13199

Moreover, assuming that the amended petition is untimely, the Court would equitably toll the limitations period due to petitioner's mental incompetency.

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

A habeas petitioner's mental incompetence or incapacity may provide a basis for equitable tolling of the AEDPA's statute of limitations. *See Ata v. Scutt*, 662 F. 3d 736, 742 (6th Cir. 2011).  Assuming the petition is untimely, the extraordinary circumstances that justify equitable tolling of the limitations period involve petitioner's serious and ongoing psychiatric problems, which were clearly evident throughout his trial, appellate, and state post-conviction pleadings.  In *United States v Brockamp*, 519 US 347 (1997), the Supreme Court suggested that tolling based on mental incapacity is allowed when it stated that "[mental disability], we assume, would permit a court to toll the statutory limitations period." *Id.,* at 348.  Petitioner satisfies the burden because the exceptional circumstances that justify equitable tolling on the basis of mental incapacity were

16

*Watkins v. Haas,* 2:10-CV-13199

clearly present during the pendency of his direct appeal and his state post-conviction proceedings. *Cf. Brown v McKee*, 232 F. Supp. 2d 761, 768 (ED Mich, 2002).

### B. The Ineffective assistance of counsel claim.

Petitioner was denied the effective assistance of trial counsel when his attorney failed to request an additional competency evaluation, in light of petitioner's continued manifestations of bizarre and delusional behavior.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that,

*Watkins v. Haas,* 2:10-CV-13199

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

The Supreme Court has repeatedly held that "the criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)(citing *Medina v. California*, 505 U.S. 437, 453 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378(1966)). A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Id.* Under Michigan law, "[W]hether [a] defendant is competent to stand trial is an ongoing concern of the court, and the issue of competence may be raised at any time during or after trial." *People v. Garfield*, 166 Mich. App. 66, 74, 420 N.W.2d 124 (1988)(citing *People v. Hamm*, 79 Mich. App. 281, 288, 261 N.W.2d 288 (1977), *lv. den.* 402 Mich. 888 (1978)).

M.C.R. 6.125(B) provides, in pertinent part:

The issue of the defendant's competence to stand trial … may be raised at any time during the proceedings against the defendant… If the competency issue arises during the course of proceedings, the court may adjourn the proceeding or, if the proceeding is defendant's trial, the court may, consonant with double jeopardy considerations, declare a mistrial.

18

*Watkins v. Haas,* 2:10-CV-13199

An attorney has a professional duty to question a defendant's competency to stand trial if they have a good faith doubt as to the defendant's competence. *See United States v. Jackson*, 179 Fed. Appx. 921, 933 (6th Cir. 2006). A criminal defense lawyer has a continuing duty to request a competency evaluation of a criminal defendant if he or she becomes became aware of facts that raise a doubt as to the competency of a defendant during any stage of the criminal proceedings. *See Williamson v. Ward*, 110 F.3d 1508, 1517-18 (10th Cir. 1997).

Trial counsel was ineffective for failing to request an additional psychiatric evaluation as to petitioner's mental competency. Petitioner was initially found mentally incompetent to stand trial by the Center for Forensic Psychiatry on March 27, 2006. Although a second report indicated that petitioner had been restored to competency, this report was issued on April 13, 2006, only two weeks after the initial report found petitioner incompetent to stand trial. Although this second report indicated that petitioner was "malingering," it acknowledged that petitioner had serious mental problems. A third report was done by the Forensic Center on July 13, 2006, this report dealt primarily with the issue of petitioner's sanity at the time of the offense, although in passing it mentioned that petitioner was "malingering." This report recognized that petitioner had long standing mental health issues.

19

*Watkins v. Haas,* 2:10-CV-13199

Petitioner's counsel did request an independent evaluation.  Petitioner's

counsel subsequently informed the trial court:

> I did have an oral report from Doctor Clark about a month ago but I
> didn't get the written report until the end of last week.  Basically I can
> summarize.  He felt that although Mr. Watkins -- there were some
> psychological issues with Mr. Watkins there was nothing sufficient in
> them to make a finding of lack of *criminal responsibility.*

(Tr., 12/12/06, p. 4)(emphasis added).

Respondent has not provided this Court with a copy of Doctor Clark's

report, but the gist of counsel's remarks suggest that the report dealt primarily

with the issue of petitioner's criminal responsibility, i.e. his sanity, and not his

competency to stand trial.

Moreover, petitioner continued to manifest bizarre and delusional behavior

and make nonsensical and incoherent remarks at a subsequent pre-trial

conference and at his trial.

At a final pretrial conference one week after defense counsel mentioned

Dr. Clark's report, petitioner remarked:

> I have an attorney's license and I'll be representing myself.  He's
> [defense trial counsel's] been fired.  If I can't have her, the public
> defender, then I will be representing myself and this is a preliminary
> exam.  Am I correct?

(Tr., 12/19/06, p 4).

*Watkins v. Haas,* 2:10-CV-13199

Petitioner appeared to be laboring under the delusion that he had an

attorney's license and also erroneously believed that he was scheduled for

preliminary examination even though he had already been bound over to trial.

These remarks clearly should have raised flags about petitioner's understanding

of the proceedings and his ability to assist in his defense.

On the first day of trial, petitioner told the judge:

> Don't play with me. I ain't got no time for your games. This ain't no
> real court. Get me back to the real world. I'm going back to my wife
> and I'm eating dinner. You heard me.

(Tr, 1/8/07, p. 10).

Petitioner's remark about going back to eat dinner with his wife suggests

that he could not fully comprehend that he was incarcerated pending trial and

could not leave the court and eat dinner with his wife.

Petitioner later told the judge his name was Michelle [the trial judge's

name is Donald Shelton]. Petitioner later stated:

> You want to split yourself in half get people up early for court. To
> this fake ass court. You know this is garbage, right? Um-hum, na,
> na I'll chop him up.

(*Id.,* p. 12).

Petitioner repeated that he would chop the judge up and informed him "I

got like a preacher sword, right?" (*Id.*). Petitioner further "demanded to be

restrained." (*Id.,* pp. 12-13). Petitioner then demanded to plead guilty and

21

*Watkins v. Haas,* 2:10-CV-13199

indicated that he had not eaten a meal since "the first." (*Id.,* p. 13).  Petitioner

continued to shout that he was guilty and demanded that the judge proceed with

sentencing. (*Id.,* p. 14). Petitioner then spat. (*Id.,* p.15).

During jury selection, petitioner again interjected "guilty" several times.

(*Id.,* pp. 34, 40).  Petitioner's remarks indicate that he was not cognizant of the

fact that the parties were picking a jury to determine petitioner's guilt or

innocence.  Petitioner was ordered removed from the courtroom after he flipped

over a desk and remarked "No more games Michelle."  Petitioner was placed in

a holding room equipped with a closed-circuit video monitor.  The trial judge

subsequently remarked that petitioner spat on an officer inside of this room and

urinated on the television and a cart. (*Id.,* p. 205).  This behavior clearly raised

serious questions as to petitioner's competency.

When petitioner returned to the courtroom to testify, counsel placed on the

record that he had advised his client against testifying but that petitioner insisted

on doing so.  Petitioner also insisted in wearing his orange jail outfit in front of

the jury, in spite of counsel's recommendation that he wear civilian clothes.

When the judge asked petitioner if he was ready to testify, petitioner replied: "I

want Jesus to be my judge."  This comment suggests that petitioner did not fully

understand that he was being judged by a jury of his peers.  On

cross-examination, the prosecutor asked petitioner if he shot and killed the

22

*Watkins v. Haas,* 2:10-CV-13199

decedent.  Petitioner answered, "I'm in fear for my life so I can't testify."

Petitioner subsequently testified that he shot the decedent with the handgun, but

denied shooting him with the shotgun or having a second shotgun in his

residence.  Petitioner testified that he shot the decedent a couple of streets away

from his own home, but then stated he did not know if he had contact with the

decedent on January 10, 2006.  Petitioner testified he had shot the decedent

because "I thought … it was him causing me to go to jail for a dope case and

that's the reason that I ended up shooting him when I got out of jail."  Petitioner

admitted firing the shotgun on January 10, 2006, but did not know who he shot.

Petitioner's testimony was rambling, incoherent, and inconsistent.  Again, this

should have placed counsel on notice to request another competency

evaluation.

   At sentencing, petitioner told the judge that he had "no real family", that he

had been born white, i.e. Caucasian, that the person who was killed on

petitioner's porch was his brother [the decedent was unrelated to petitioner].

Petitioner told the judge that his family had to assume aliases and that his "name

became Watkins due to the medicine that we use to beat tuberculosis which was

killing black kids.  But I was born a white baby and got pigment from Quincey."

The judge acknowledged that petitioner was "clearly mentally ill" and "seriously

mentally disturbed."

23

*Watkins v. Haas,* 2:10-CV-13199

While petitioner's application for leave to appeal was pending in the Michigan Court of Appeals, petitioner's appellate counsel filed a motion to remand, which included a copy of petitioner's medical records from the Michigan Department of Corrections including a report of a comprehensive psychiatric examination performed on March 14, 2007. This report indicated a diagnosis of a psychotic disorder, and that petitioner had been prescribed anti-psychotic medication.

In light of petitioner's extensive history of mental and psychiatric problems, his continued bizarre behavior and delusional or paranoid statements, his non-responsive answers to some of the judge's or counsel's comments, and his utter inability to cooperate with counsel or follow his advice, counsel was clearly ineffective in failing to request an additional competency evaluation. *Williams,* 110 F. 3d at 1517-18; *See also Brown v. Sternes*, 304 F. 3d 677, 695-98 (7th Cir. 2002)(substitute counsel was ineffective in failing to demand action on unexecuted subpoena for defendant's medical records from state correctional facility, which would have disclosed a diagnosis of chronic schizophrenia, and to renew request for second psychiatric examination of defendant after defendant's

*Watkins v. Haas,* 2:10-CV-13199

courtroom outburst when defense rested in bench trial in which defendant pled

guilty).  Petitioner is thus entitled to the issuance of a writ of habeas corpus. [5]

The Court orders the State of Michigan to either (1) set a new trial date

that is within ninety days of entry of this order or (2) release petitioner

unconditionally.

Because this Court's conclusion that petitioner is entitled to habeas relief

on this  claim is dispositive of the petition, the Court considers it unnecessary to

review petitioner's other claims and declines to do so. *See Satterlee v.*

*Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *aff'd,* 453 F. 3d 362

(6th Cir. 2006); *cert. den.,* 127 S. Ct 1832 (2007).

---

[5]  The Court notes the apparent incongruity between respondent's argument that petitioner was not incompetent, thus, counsel was not ineffective for failing to request another competency evaluation, but later in his answer in opposing petitioner's fourth claim involving the denial of his right to self-representation cites to the case of *Indiana v. Edwards*, 554 U.S. 164 (2008), in which the Supreme Court held that a trial court may bar a defendant who is not mentally competent from representing himself. *See* Respondent's Answer, pp. 67-68.

*Watkins v. Haas,* 2:10-CV-13199

## IV. ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, THE STATE OF MICHIGAN SHALL RELEASE PETITIONER UNCONDITIONALLY FROM CUSTODY.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: October 23, 2015

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 23, 2015, by electronic and/or ordinary mail.
S/Catherine A. Pickles
Judicial Assistant

26